IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | | |
|---|---|---|
| THERMOFLUID TECHNOLOGIES, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. _____ |
| | ) | |
| ENVIRO-SAFE REFRIGERANTS, INC. | ) | JURY TRIAL REQUESTED |
| | ) | |
| Defendant. | ) | |

## COMPLAINT FOR FEDERAL UNFAIR COMPETITION, COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION, AND VIOLATIONS OF THE TENNESSEE CONSUMER PROTECTION ACT

Plaintiff, Thermofluid Technologies, Inc., for its complaint against Defendant, Enviro-Safe Refrigerants, Inc., states as follows:

### NATURE OF THE ACTION

1. This Complaint is an action for trademark infringement, passing off, and unfair competition pursuant to the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a) and for violation of the Tennessee Consumer Protection Act barring unfair and deceptive trade practices, Tenn. Code Ann. § 47-18-104.

### PARTIES

2. Plaintiff, Thermofluid Technologies, Inc., is a Tennessee corporation with a principal place of business at 3031 Topside Business Park Drive, Louisville, Tennessee 37777.

3. Upon information and belief, Defendant, Enviro-Safe Refrigerants, Inc., is an Illinois corporation with a place of business at 400 Hanna Drive, Pekin, Illinois 61554.

## JURISDICTION AND VENUE

4. This is an action for monetary damages and injunctive relief relating to Defendant's trademark infringement and unfair and deceptive trade practices in violation of the laws of the United States of America and the State of Tennessee.

5. This Court has jurisdiction of the subject matter pursuant to at least 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, 1332, and 1338, and under this Court's pendent jurisdiction over related state and common law claims arising under the same operative facts and circumstances in accordance with 28 U.S.C. § 1367.

6. Personal jurisdiction is proper in this district for at least the reason that the Defendant and the Plaintiff have, until recently, had a long-standing barter and/or sale of product business arrangement, in which the Plaintiff provided the Defendant with bulk chemical products, sold under at least one of the trademarks at issue, which the Defendant then repackaged these chemical products for retail sale by the Defendant.

7. Personal jurisdiction is also proper in this district for at least the reason that the Defendant was, until recently, the licensee of the trademarks at question, pursuant to a Trademark License Agreement that was, at least in part, negotiated and agreed to in this district.

8. Personal jurisdiction is proper in this district for at least the reason that the Defendant has entered into and maintained the Trademark License Agreement with the Plaintiff, a resident of this district, which was negotiated, agreed to, and performed, at least in part, within this state. By entering into this agreement, the Defendant has further availed itself of the privileges and protections of the laws of the State of Tennessee. Moreover, the Plaintiff's claims arise out of and relate to the Defendant's activities in the State of Tennessee, including, upon information and belief, the Defendant's sale of products to residents of this state and its

engagement in the Trademark License Agreement with the Plaintiff. These activities form the basis for the Plaintiff's causes of action, which directly stem from the Defendant's conduct within this jurisdiction.

9. Personal jurisdiction is also proper in this district for at least the reason that the Defendant has committed acts of infringement and unfair competition in this District, including, upon information and belief, online sales and shipments of products directly to residents of this state.

10. Venue is proper in this district pursuant to at least 28 U.S.C. §§ 1391(a), (b) and (c).

## FACTUAL BACKGROUND

11. Plaintiff is, and at all times relevant hereto has been, in the business of producing and selling at both wholesale and retail, environmentally safe refrigeration system sealants, liquid drying agents, and lubricant for automotive and HVAC air conditioning systems, (hereinafter collectively referred to as "Plaintiff's Goods"), in Tennessee, the surrounding regions, and nationally both in the United States and in Canada ("Plaintiff's Trade Area").

12. Since at least as early as March of 1998, Plaintiff has been substantially exclusively and continuously using and is now using the marks PROSEAL and PRODRY, and, since at least as early August of 1999, has been substantially exclusively and continuously using and is now using the mark OILCHARGE, in commerce in Plaintiff's Trade Area for and in connection with Plaintiff's Goods. The marks PROSEAL, PRODRY, and OILCHARGE are collectively referred to herein as "the THERMOFLUID Marks".

13. Plaintiff adopted and began using the mark PROSEAL in the US at least as early as March 31, 1998.

14. The Mark PROSEAL was registered with the United States Patent and Trademark Office, (hereinafter "USPTO"), on July 1, 2025, under Registration No. 7,847,509.

15. Plaintiff adopted and began using the mark PRODRY in the US at least as early as March 31, 1998.

16. The Mark PRODRY was registered with the USPTO on April 12, 2025, under Registration No. 7,744,876.

17. Plaintiff adopted and began using the mark OILCHARGE in the US at least as early as August 1, 1999.

18. The Mark OILCHARGE was registered with USPTO on April 29, 2025, under Registration No. 7,774,867.

19. Registration of the THERMOFLUID Marks constitutes prima facie evidence of the validity of the registered THERMOFLUID Marks and of the registration of the THERMOFLUID Marks, of the registrant's ownership of the THERMOFLUID Marks, and of the registrant's exclusive right to use the registered THERMOFLUID Marks in commerce on or in connection with the goods or services specified in the registrations.

20. Plaintiff's Goods marketed and sold under the THERMOFLUID Marks are advertised and promoted to consumers regionally and nationally via the Internet at Plaintiff's website at www.redtek.com, through its network of dealers, and through other online advertising.

21. By virtue of the quality and nature of the Plaintiff's Goods offered under the THERMOFLUID Marks in Plaintiff's Trade Area, the extensive sales, advertising, provision, marketing, and promotion of Plaintiff's Goods under the THERMOFLUID Marks, and the substantially exclusive and continuous use of the THERMOFLUID Marks in commerce for at

least twenty-five years for and in connection with Plaintiff's Goods in Plaintiff's Trade Area, the Thermofluid Marks have acquired and come to symbolize and identify a source of great and valuable goodwill for and in connection with Plaintiff's Goods.

22. The THERMOFLUID Marks are valid and subsisting, now owned and not abandoned by Plaintiff for use with Plaintiff's Goods.

23. Plaintiff owns all right, title, and interest in and to the THERMOFLUID Marks for use in connection with Plaintiff's Goods in Plaintiff's Trade Area.

24. Plaintiff first adopted, used, and has made substantially continuous and exclusive use of the THERMOFLUID Marks in commerce for and in connection with Plaintiff's Goods prior to Defendant's use of the THERMOFLUID Marks. Defendant's first use of the THERMOFLUID Marks was initially authorized by the Plaintiff.

25. As part of the original Trademark License Agreement, Plaintiff granted to the Defendant, and the Defendant accepted, a non-exclusive, non-transferable license to use the THERMOFLUID Marks solely in connection with the packaging, labeling, promotion, and resale of Thermofluid Refrigerant Chemicals supplied in bulk by the Plaintiff.

26. Under the original Trademark License Agreement, the Defendant was permitted to package product in various container sizes under the THERMOFLUID Marks, subject to strict compliance with the quality control provisions herein.

27. Prior to February 16, 2024, the Plaintiff's primary contact with the Defendant was Mr. Randall Price.

5

Case 3:25-cv-00472-CEA-JEM   Document 1   Filed 09/23/25   Page 5 of 19   PageID #: 5

28. Upon information and belief, at various times during the parties' relationship, Mr. Price served as an officer and/or Director of the Defendant, and he was the Director of the Defendant from sometime in 2021 until he was terminated by the Defendant.

29. The original Trademark License Agreement included provisions related to the Defendant's efforts to control the quality of its products bearing the THERMOFLUID Marks, including the careful handling of the Thermofluid Refrigerant Chemicals.

30. As part of the original Trademark License Agreement, Mr. Price understood that Enviro-Safe was required to store the Thermofluid Refrigerant Chemicals in a dedicated, well-ventilated enclosure between 40°F to 80°F in a low-humidity environment protected from rain, condensation, and ambient moisture.

31. As part of the original Trademark License Agreement and the overall business arrangement with the Defendant, the Plaintiff provided the Defendant with the Thermofluid Refrigerant Chemicals.

32. During the time that the Plaintiff dealt with the Defendant through Plaintiff's contact with Mr. Price, the Plaintiff was familiar with and trusted Mr. Price's understanding of the quality control provisions of the original Trademark License Agreement and trusted and relied upon Mr. Price's efforts, on behalf of the Defendant, to handle the Thermofluid Refrigerant Chemicals with the quality control parameters required by the Thermofluid Refrigerant Chemicals and by the original Trademark License Agreement.

33. Under the original Trademark License Agreement, Defendant was permitted to use the THERMOFLUID Marks only if the Defendant purchased Thermofluid Refrigerant Chemicals from the Plaintiff.

34. Under the original Trademark License Agreement, the Defendant was only authorized to use THERMOFLUID Marks on products that included refrigerant chemicals obtained from the Plaintiff and only if stored and packaged under conditions meeting the Plaintiff's quality standards.

35. No rights were granted to the Defendant to use the THERMOFLUID Marks if the Defendant obtained refrigerant chemicals from an unauthorized source.

36. Upon information and belief, Mr. Price was terminated by the President of the Defendant on or around February 16, 2024.

37. After the termination of Mr. Price from the Defendant, Plaintiff became concerned that the remaining management team of the Defendant did not understand the quality control parameters required by the Thermofluid Refrigerant Chemicals.

38. After the termination of Mr. Price from the Defendant, Plaintiff became further concerned that the Defendant was no longer abiding by the quality control provisions of the original Trademark License Agreement.

39. Upon information and belief, after the termination of Mr. Price from the Defendant, the Defendant was no longer storing the Thermofluid Refrigerant Chemicals as required by the original Trademark License Agreement but rather was storing the Thermofluid Refrigerant Chemicals in a hot and humid environment.

40. After the termination of Mr. Price, the Defendant stopped purchasing Thermofluid Refrigerant Chemicals from the Plaintiff but, nevertheless, continued using the Thermofluid Marks.

41. On or about July 19, 2024, Plaintiff notified Ms. Price, the President of Enviro-Safe, that the then existing license agreement between Plaintiff and Defendant was being terminated in thirty (30) days.

42. In its July 19, 2024, correspondence, Plaintiff indicated that it was "hopeful" that the parties could come to agreement on an updated Trademark License Agreement covering the THERMOFLUID Marks.

43. In its July 19, 2024, correspondence, Plaintiff also advised Defendant that any further use of the THERMOFLUID Marks after the termination date, without entering into an updated Trademark License Agreement, would constitute unauthorized use of the THERMOFLUID Marks and would constitute infringement of the THERMOFLUID Marks.

44. Defendant has not, at the time of filing this action, entered into an updated Trademark License Agreement allowing it to use the THERMOFLUID Marks.

45. Upon information and belief, Defendant has sold and continues to sell products bearing the Plaintiff's ProSeal, ProDry, and OilCharge trademarks in the United States.

46. Notwithstanding that the Defendant has refused to agree to enter into an updated Trademark License Agreement, or even to negotiate the terms of an updated Trademark License Agreement, the Defendant has willfully continued the unauthorized use THERMOFLUID Marks.

47. Notwithstanding the fact that the Defendant has refused to enter into an updated Trademark License Agreement, Defendant is continuing to use the THERMOFLUID Marks, or marks which are substantially identical to the THERMOFLUID Marks, without authorization.

48. Defendant's Goods are substantially identical to Plaintiff's Goods.

49. Defendant is selling and offering to sell, substantially similar if not identical goods within Plaintiff's Trade Area bearing the THERMOFLUID Marks.

50. The continued advertising, promotion, provision, sale, and/or offer for sale of Defendant's Goods by Defendant under the THERMOFLUID Marks has been done without the license, consent, or acquiescence of Plaintiff.

51. Defendant's unlicensed and unauthorized use of the THERMOFLUID Marks for Defendant's Goods is likely to cause confusion among consumers, the trade in general, and the public at large as to the source and affiliation of Defendant's Goods vis-à-vis the source of Plaintiff's Goods offered under the THERMOFLUID Marks.

52. As evidenced by being party to the previous license agreement, Defendant knew of Plaintiff's adoption and prior use of the THERMOFLUID Marks to identify the source of Plaintiff's Goods before Defendant commenced use of the THERMOFLUID Marks, and therefore, Defendant is willfully infringing, and continues to willfully infringe, upon Plaintiff's rights in the THERMOFLUID Marks.

53. Despite refusing to agree to and enter into an updated Trademark License Agreement, Defendant is continuing to use the THERMOFLUID Marks in willful disregard of Plaintiff's prior and superior rights therein.

COUNT I
PROSEAL - FEDERAL TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, AND RELATED VIOLATIONS

54. Plaintiff restates all preceding paragraphs as if fully set forth herein, and for its Count I states as follows:

55. Without authorization or license, the Defendant is and has been using the Thermofluid PROSEAL mark in commerce in Plaintiff's Trade Area for and in connection with Defendant's Goods, which are the same as or are so closely related to those for which the Thermofluid PROSEAL mark has been and is being used by Plaintiff, and the marks themselves are legally identical, such that Defendant's unauthorized use is likely to cause confusion, mistake, and/or deception in violation of 15 U.S.C. §§ 1114 and 1125(a).

56. Unauthorized use by Defendant of the Thermofluid PROSEAL mark, as alleged herein, falsely represents or suggests to the consumers and to persons in the trade and industry that the Defendant's Goods promoted, sold, offered for sale, and/or advertised by Defendant in Plaintiff's Trade Area under the Thermofluid PROSEAL mark are provided, distributed and/or sold by or from the same commercial source as, or with the permission of or authorization from the same commercial source as, the Plaintiff's Goods provided, distributed, and/or sold under the Thermofluid PROSEAL mark and/or that Defendant's Goods have been provided in accordance or in compliance with the quality standards established by Plaintiff for Plaintiff's Goods offered and/or sold under the Thermofluid PROSEAL mark, in further violation of 15 U.S.C. §§ 1114 and 1125(a).

57. Defendant has, by its continued unauthorized and unlicensed use of the Thermofluid PROSEAL mark, falsely represented to, misrepresented, and deceived the purchasing public and the trade in general as to the commercial origin or source of the Defendant's Goods offered and/or sold in commerce in Plaintiff's Trade Area by Defendant under the Thermofluid PROSEAL mark so as to cause members of the purchasing public and/or persons in the trade and/or industry in general to falsely or mistakenly believe that the

Defendant's Goods provided by Defendant in Plaintiff's Trade Area under the Thermofluid PROSEAL mark have been authorized by, sponsored by, approved by, or are connected or affiliated with the source of Plaintiff's Goods provided in Plaintiff's Trade Area under the Thermofluid PROSEAL mark, and to falsely or mistakenly believe that the Defendant's Goods emanate from the same commercial source as that of the Plaintiff's Goods sold or distributed in commerce in Plaintiff's Trade Area under Plaintiff's PROSEAL mark or from a commercial source related to, connected with, or affiliated with that from which the goods emanate under Plaintiff's PROSEAL mark.

58. The unauthorized uses by Defendant of the Thermofluid PROSEAL mark as alleged herein constitutes false and misleading designations of origin in violation of 15 U.S.C. §§ 1114 and 1125(a).

59. The unlawful, unjust, and unfair use of the Thermofluid PROSEAL mark by Defendant has and is being undertaken with knowledge of Plaintiff's prior use and quiet enjoyment of and superior rights in the Thermofluid PROSEAL mark, and with the deliberate and willful intent to infringe upon, violate and harm the rights of Plaintiff and to unlawfully and unfairly compete with and divert trade, goodwill, and revenue from Plaintiff to Defendant, whereby Defendant has been, is being, and will continue to be unjustly enriched with revenue and other benefits proximately caused by and/or resulting from Defendant's unlawful, unjust, and unfair use of confusingly similar variations of Plaintiff's PROSEAL mark and intellectual property rights associated therewith.

60. The acts of Defendant alleged herein have caused and will continue to cause substantial and irreparable harm, damage, and injury to Plaintiff for which Plaintiff has no

fully adequate remedy at law and will continue unless and until enjoined and restrained by this Court.

## COUNT II
## PRODRY – FEDERAL TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, AND RELATED VIOLATIONS

61. Plaintiff restates all preceding paragraphs as if fully set forth herein, and for its Count II states as follows:

62. Without authorization or license, the Defendant is and has been using the Thermofluid PRODRY mark in commerce in Plaintiff's Trade Area for and in connection with Defendant's Goods, which are the same as or are so closely related to those for which the Thermofluid PRODRY mark has been and is being used by Plaintiff, and the marks themselves are legally identical, such that Defendant's unauthorized use is likely to cause confusion, mistake, and/or deception in violation of 15 U.S.C. §§ 1114 and 1125(a).

63. Unauthorized use by Defendant of the Thermofluid PRODRY mark, as alleged herein, falsely represents or suggests to the consumers and to persons in the trade and industry that the Defendant's Goods promoted, sold, offered for sale, and/or advertised by Defendant in Plaintiff's Trade Area under the Thermofluid PRODRY mark are provided, distributed and/or sold by or from the same commercial source as, or with the permission of or authorization from the same commercial source as, the Plaintiff's Goods provided, distributed, and/or sold under the Thermofluid PRODRY mark and/or that Defendant's Goods have been provided in accordance or in compliance with the quality standards established by Plaintiff for Plaintiff's Goods offered and/or sold under the Thermofluid PRODRY mark, in further violation of 15 U.S.C. §§ 1114 and 1125(a).

64. Defendant has, by its continued unauthorized and unlicensed use of the Thermofluid PRODRY mark, falsely represented to, misrepresented, and deceived the purchasing public and the trade in general as to the commercial origin or source of the Defendant's Goods offered and/or sold in commerce in Plaintiff's Trade Area by Defendant under the Thermofluid PRODRY mark so as to cause members of the purchasing public and/or persons in the trade and/or industry in general to falsely or mistakenly believe that the Defendant's Goods provided by Defendant in Plaintiff's Trade Area under the Thermofluid PRODRY mark have been authorized by, sponsored by, approved by, or are connected or affiliated with the source of Plaintiff's Goods provided in Plaintiff's Trade Area under the Thermofluid PRODRY mark, and to falsely or mistakenly believe that the Defendant's Goods emanate from the same commercial source as that of the Plaintiff's Goods sold or distributed in commerce in Plaintiff's Trade Area under Plaintiff's PRODRY mark or from a commercial source related to, connected with, or affiliated with that from which the goods emanate under Plaintiff's PRODRY mark.

65. The unauthorized uses by Defendant of the Thermofluid PRODRY mark as alleged herein constitutes false and misleading designations of origin in violation of 15 U.S.C. §§ 1114 and 1125(a).

66. The unlawful, unjust, and unfair use of the Thermofluid PRODRY mark by Defendant has and is being undertaken with knowledge of Plaintiff's prior use and quiet enjoyment of and superior rights in the Thermofluid PRODRY mark, and with the deliberate and willful intent to infringe upon, violate and harm the rights of Plaintiff and to unlawfully and unfairly compete with and divert trade, goodwill, and revenue from Plaintiff to Defendant,

whereby Defendant has been, is being, and will continue to be unjustly enriched with revenue and other benefits proximately caused by and/or resulting from Defendant's unlawful, unjust, and unfair use of confusingly similar variations of Plaintiff's PRODRY mark and intellectual property rights associated therewith.

67. The acts of Defendant alleged herein have caused and will continue to cause substantial and irreparable harm, damage, and injury to Plaintiff for which Plaintiff has no fully adequate remedy at law and will continue unless and until enjoined and restrained by this Court.

## COUNT III
## OILCHARGE - FEDERAL TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, AND RELATED VIOLATIONS

68. Plaintiff restates all preceding paragraphs as if fully set forth herein, and for its Count III states as follows:

69. Without authorization or license, the Defendant is and has been using the Thermofluid OILCHARGE mark in commerce in Plaintiff's Trade Area for and in connection with Defendant's Goods, which are the same as or are so closely related to those for which the Thermofluid OILCHARGE mark has been and is being used by Plaintiff, and the marks themselves are legally identical, such that Defendant's unauthorized use is likely to cause confusion, mistake, and/or deception in violation of 15 U.S.C. §§ 1114 and 1125(a).

70. Unauthorized use by Defendant of the Thermofluid OILCHARGE mark, as alleged herein, falsely represents or suggests to the consumers and to persons in the trade and industry that the Defendant's Goods promoted, sold, offered for sale, and/or advertised by Defendant in Plaintiff's Trade Area under the Thermofluid OILCHARGE mark are provided,

distributed and/or sold by or from the same commercial source as, or with the permission of or authorization from the same commercial source as, the Plaintiff's Goods provided, distributed, and/or sold under the Thermofluid OILCHARGE mark and/or that Defendant's Goods have been provided in accordance or in compliance with the quality standards established by Plaintiff for Plaintiff's Goods offered and/or sold under the Thermofluid OILCHARGE mark, in further violation of 15 U.S.C. §§ 1114 and 1125(a).

71. Defendant has, by its continued unauthorized and unlicensed use of the Thermofluid OILCHARGE mark, falsely represented to, misrepresented, and deceived the purchasing public and the trade in general as to the commercial origin or source of the Defendant's Goods offered and/or sold in commerce in Plaintiff's Trade Area by Defendant under the Thermofluid OILCHARGE mark so as to cause members of the purchasing public and/or persons in the trade and/or industry in general to falsely or mistakenly believe that the Defendant's Goods provided by Defendant in Plaintiff's Trade Area under the Thermofluid OILCHARGE mark have been authorized by, sponsored by, approved by, or are connected or affiliated with the source of Plaintiff's Goods provided in Plaintiff's Trade Area under the Thermofluid OILCHARGE mark, and to falsely or mistakenly believe that the Defendant's Goods emanate from the same commercial source as that of the Plaintiff's Goods sold or distributed in commerce in Plaintiff's Trade Area under Plaintiff's OILCHARGE mark or from a commercial source related to, connected with, or affiliated with that from which the goods emanate under Plaintiff's OILCHARGE mark.

72. The unauthorized uses by Defendant of the Thermofluid OILCHARGE mark as alleged herein constitutes false and misleading designations of origin in violation of 15 U.S.C. §§ 1114 and 1125(a).

73. The unlawful, unjust, and unfair use of the Thermofluid OILCHARGE mark by Defendant has and is being undertaken with knowledge of Plaintiff's prior use and quiet enjoyment of and superior rights in the Thermofluid OILCHARGE mark, and with the deliberate and willful intent to infringe upon, violate and harm the rights of Plaintiff and to unlawfully and unfairly compete with and divert trade, goodwill, and revenue from Plaintiff to Defendant, whereby Defendant has been, is being, and will continue to be unjustly enriched with revenue and other benefits proximately caused by and/or resulting from Defendant's unlawful, unjust, and unfair use of confusingly similar variations of Plaintiff's OILCHARGE mark and intellectual property rights associated therewith.

74. The acts of Defendant alleged herein have caused and will continue to cause substantial and irreparable harm, damage, and injury to Plaintiff for which Plaintiff has no fully adequate remedy at law and will continue unless and until enjoined and restrained by this Court.

## COUNT IV
## VIOLATION OF TENNESSEE CONSUMER PROTECTION ACT

75. Plaintiff restates all preceding paragraphs as if fully set forth herein, and for its Count IV states as follows:

76. By the actions alleged herein, Defendant is in violation of the Tennessee Consumer Protection Act, T.C.A. § 47-18-101 et seq. The acts complained of violate at least subsections (1), (2), (3), and (5) of T.C.A. § 47-18-104(b).

77. As a result of the actions alleged herein, Plaintiff has suffered and continues to suffer financial damage, injury, and irreparable harm.

78. Defendant committed the actions alleged herein knowingly and willfully.

79. Pursuant to T.C.A. 47-18-109(a)(3), Plaintiff is entitled to treble damages for the knowing and willful acts of Defendant alleged herein.

80. Pursuant to T.C.A. 47-18-109(e)(1), Plaintiff is entitled to its reasonable attorney fees and costs in bringing this claim.

## COUNT V
## COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

81. Plaintiff restates all preceding paragraphs as if fully set forth herein, and states for its Count V as follows:

82. The activities of Defendant as alleged herein constitute unfair competition and trade piracy in violation of the common law and have been undertaken in order to cause confusion, deception, and mistake among consumers of Plaintiff's Goods and persons in the trade and industry in Plaintiff's Trade Area, and to allow Defendant to usurp and to unjustly and unfairly benefit and enrich itself and its principals, and employees by siphoning away goodwill and value built up by Plaintiff over many years of use of and extensive investment in advertising and promotion of Plaintiff's THERMOFLUID Marks.

83. Defendant's acts as alleged herein have engendered or are likely to engender a false belief in the minds of the public and persons in the trade and industry in general that Defendant is affiliated with, sponsored by, or associated with the source of Plaintiff's Goods marketed and sold under Plaintiff's previously used THERMOFLUID Marks.

84. The acts of Defendant alleged herein have caused and will continue to cause substantial and irreparable harm, damage, and injury to Plaintiff for which Plaintiff has no fully adequate remedy at law and will continue unless and until enjoined and restrained by this Court.

WHEREFORE, Plaintiff prays for at least the following relief:

a. A preliminary and permanent injunction and such other and further relief as is provided for under 15 U.S.C. § 1116, Tenn. Code Ann. § 47-18-109(b), and/or the common law to prohibit any further violation of Plaintiff's rights in the THERMOFLUID Marks and prohibiting Defendant from unfairly competing with Plaintiff through the use of spurious designations substantially identical to or confusingly similar to Plaintiff's previously used THERMOFLUID Marks.

b. An accounting and recovery under 15 USC § 1117(a) and/or Tenn. Code Ann. § 47-18-109 of Defendant's profits resulting from violation of Plaintiff's rights in the THERMOFLUID Marks.

c. Recovery under 15 USC § 1117(a), Tenn. Code Ann. § 47-18-109, and/or the common law of Plaintiff's damages, in an amount to be determined.

d. Trebling of the profits or damages, whichever is greater, together with an award of Plaintiff's reasonable attorney's fees and expenses and prejudgment interest, under 15 USC § 1117(a) and/or Tenn. Code Ann. § 47-18-109 due to the deliberate and willful violation by Defendant of Plaintiff's rights in the THERMOFLUID Marks.

e. An award to Plaintiff of its costs in this action.

f. That all products, goods, labels, signs, prints, packages, and advertising literature in the possession or control of Defendant bearing the THERMOFLUID Marks or any other colorable imitation or confusingly similar variation of the THERMOFLUID Marks of Plaintiff be delivered up to an officer of the Court for destruction pursuant to 15 USC § 1118.

g. Such other, further, and additional relief as this Court may deem reasonable and just.

Plaintiff demands a jury to try the issues joined.

                    Respectfully submitted,

                    THERMOFLUID TECHNOLOGIES, INC.,

                    By: s/Michael J. Bradford
                          Michael J. Bradford, BPR #22689
                          LUEDEKA NEELY, P.C.
                          P. O. Box 1871
                          1504 Riverview Tower
                          Knoxville, TN 37901
                          Phone: (865) 546-4305
                          Fax: (865) 523-4478

                          *ATTORNEYS FOR PLAINTIFF*